**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**

-----------------------------------------------------------------

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| VPR, LLC,[1] | ) | Adversary Proceeding |
|  | ) |  |
| Reorganized Debtor. | ) | Case No. 24-50315-RBC |
|  | ) |  |
|  | ) |  |

-----------------------------------------------------------------

|  |  |
|---|---|
| VPR, LLC, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| CENTURY RELIEF LLC, | ) |
|  | ) |
| and | ) |
|  | ) |
| EPPS, LLC, | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

-----------------------------------------------------------------

## COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS AND FOR RECOVERY OF FUNDS

VPR, LLC ("VPR" and/or "Plaintiff" and/or "Debtor"), a reorganized debtor in the

above-mentioned Chapter 11 case, by undersigned counsel, brings this adversary proceeding

against Century Relief LLC, ("Century Relief") and EPPS, LLC ("EPPS") (collectively, Century

Relief and EPPS are the "Defendants") seeking the avoidance, turnover and recovery of certain

prepetition transfers to the Defendants pursuant to sections 542, 544, 548, 550 and 551 of Title

---

[1] The Reorganized Debtor and the last four digits of its taxpayer identification number are as follows: VPR, LLC (0580). The Debtor's headquarters are located at 2023 Hudson Hollow Rd, Stephens City, Virginia 22655.

11 of the United States Code (the "Bankruptcy Code"), section 6502(a) of Title 26 of the United

States Code, Va. Code section 8.01-253, Rules 6009 and 7001 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and applicable state law. In further support of

the Complaint, VPR respectfully states as follows:

## JURISDICTION AND VENUE

1.      The Bankruptcy Court has subject matter jurisdiction over this Adversary

Proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

2.      The Adversary Proceeding constitutes a core proceeding by virtue of 28 U.S.C.

§ 157(b)(2)(A), (E), and (O).

3.      Plaintiff confirms its consent, pursuant to Bankruptcy Rule 7008, to the entry of

final order by the Court in connection with this Complaint to the extent it is later determined that

this Court, absent consent of the parties, cannot enter final orders or judgments in connection

herewith consistent with Article III of the United States Constitution.

4.      Venue is proper in this Bankruptcy Court under 28 U.S.C. §§ 1408 and 1409.

5.      Venue is proper in this Bankruptcy Court as to the Defendants because a substantial

part of the events or omissions giving rise to the claims asserted herein against the Defendants

occurred in this judicial district.

## PARTIES

6.      Plaintiff is a limited liability company organized under the laws of the

Commonwealth of Virginia. Plaintiff's headquarters is located, and at all relevant times has been

located at 2023 Hudson Hollow Rd, Stephens City, Virginia 22655.

7.      On June 10, 2024, Plaintiff filed a voluntary petition for relief under subchapter V

of Chapter 11 of the Bankruptcy Code, commencing Case No. 24-50315 ("VPR's Chapter 11

Case").  On November 21, 2024, the Court confirmed VPR's Chapter 11 Plan of Reorganization (the "Plan"), and on December 21, 2024, the Plan became Effective.  Pursuant to the Plan, the Plaintiff is pursuing avoidance actions to avoid avoidable transfers and recover property for the benefit of its bankruptcy estate.

8.      Upon information and belief, Century Relief is a New Jersey limited liability company with a principal place of business located at 30 Montgomery St., Jersey City, NJ 07302.

9.      Upon information and belief, EPPS is a Nevada limited liability company with a principal place of business located at 4730 S. Fort Apache Rd., Suite 300, Las Vegas, Nevada 89147.

## BACKGROUND

10.      The Plaintiff is currently and was at all relevant times to this Complaint in the business of roofing construction and contracting services.  Joseph Eshelman and Sheila Eshelman are and were at all times relevant to this Complaint the principals and members of the Plaintiff.

11.      In November 2023, Plaintiff contacted Century Relief seeking assistance in resolving its debts with two merchant cash advance providers, Vox Funding LLC and National Funding (collectively, the "MCAs").

12.      At that time, Plaintiff was unable to afford the onerous repayment terms required by the MCAs and needed relief from the same.

13.      On or about November 27, 2023, the Plaintiff, by Joseph Eshelman, entered into a certain agreement (the "Century Agreement") with Century Relief, a copy of which is attached hereto as "Exhibit A" and made a part hereof.

14.      The Century Agreement provides as follows with respect to the purpose of the engagement:

> It is agreed that [Plaintiff] has hired [Century Relief] and/or its affiliates and agents to negotiate the restructure, discharge, and or settlement the accounts listed in the document Schedule "A" attached herein, and to enter into the [Plaintiff] into affordable payment terms based on the monthly cash flow.

15.    The Schedule "A" to the Century Agreement lists the following accounts:

**Schedule "A"**

| Creditor | Account # | Debt Balance |
|---|---|---|
| Vox Funding LLC | 00000000 | $167,845.00 |
| National Funding | 00000000 | $97,000.00 |
| | | **$264,845.00** |

16.    Century Relief's welcome packet information (the "Welcome Packet"), a copy of which is attached hereto as "Exhibit A" and made a part hereof, explains Century Relief's "proven debt relief program" (the "Program") that is "designed to help you reduce, restructure, or eliminate your business debt…."  The Welcome Packet assures Plaintiff that Century Relief's "program has helped thousands of people just like yourself take control of your finances."

17.    Under the Program, the Plaintiff would be required to make regular, periodic, scheduled payments that would be deposited into a dedicated savings account managed by EPPS.

18.    According to the Welcome Packet, "[t]his EPPS account is the account that your monthly payments will be deposited into and the account that will accumulate savings funds to be used for settlements."   See Exhibit B at page 3.

19.    The Century Agreement include an Electronic Funds Transfer (EFT) Authorization to Debit Bank Account (the "EPPS EFT Authorization") at pages 11 and 12.

20.    Joseph Eshelman completed and signed the EPPS EFT Authorization dated November 27, 2023.

21.    The EPPS EFT Authorization includes this provision for the formation of a "special purpose account:"

> I hereby apply for and agree to establish a non-interest bearing special purpose account (the "Account") with a bank ("Bank") selected by *EPPS, LLC* and/or its successors for the purpose of accumulating funds to pay for such goods and services as I so direct *EPPS, LLC* to perform.

22.     The Century Agreement describes the EPPS account as a "dedicated" "trust account" to be used for "settlement and/or restructure payments:"

> **Third Party Dedicated Trust Account** – Century shall not and does not hold escrow funds of any kind in a bank account in its own name on behalf of the [Plaintiff] in order to make settlement payments. [Plaintiff] shall authorize a third party dedicated account to debit the [Plaintiff] as per the installment schedule provided in the Century agreement and to accumulate funds in the dedicated account to be used for settlement and/or restructure payments.

23.     Under the Program, Century Relief committed to negotiating proposed settlements with the MCAs and presenting the same to the Plaintiff.  If Plaintiff agreed to a proposed settlement, then the accumulated savings funds (the "Savings Funds") would be utilized to pay and satisfy the Plaintiff's obligation under the settlement.

24.     The Welcome Packet explains the process as follows:

> By us using the EPPS account, we will monitor the account and will be able to negotiate with the creditors based on what savings are available for settlement.

> See Exhibit B at page 3.

25.     The Century Agreement provides for a "fee" to be calculated based on the total "enrolled debt" and allocates that "fee" into a 10% "Enrollment" fee and a 20% "Servicing" fee. See Exhibit A at page 2.

26.     With respect to the Enrollment fee, the Century Agreement states:

> All installment payments made to the Firm that are applied to the Enrollment Fee are mutually agreed as non-refundable and to be applied in no more that [sic] the first six monthly installments.

However, if Company terminates this agreement prior to payment in full of the agreed upon fee, remaining portions of the unpaid fee may be debited directly from the clients [sic] trust account.

See Exhibit A at page 2.

27.    With respect to the Servicing fee, the Century Agreement states: "If [Century Relief] is able to obtain a reasonable offer to settle, discharge, or restructure any enrolled debt, and the [Plaintiff] choses [sic] not to accept the offer, the Servicing fees still apply."  See Exhibit A at page 2.

28.    The Century Agreement purports to authorize Century Relief to "designate a law firm to assist as necessary" and to "retain" counsel to "represent [Plaintiff] in litigation:"

**Engagement Letter** – It is understood and agreed that Company shall sign an engagement letter with a law firm of its own choice. Alternatively, Century will designate a law firm to assist as necessary; Century agrees to pay the invoices for all legal services rendered by the designated law firm pursuant to this agreement. Additionally, Century may retain local counsel in order to represent Company in litigation. It is understood and agreed that all costs related to the retention of local counsel will be paid by Company with funds deposited into the dedicated trust account with Company authorization and by signing this agreement Company specifically authorizes removal of those funds from the dedicated trust account. Company's Legal representation does not include any services rendered in Appellate Courts or any actions or proceedings other than those related to the debts documented herein.

See Exhibit A at pages 2-3.

29.    As shown on the Plaintiff's accounting report dated June 17, 2025, a copy of which is attached hereto as "Exhibit C" and made a part hereof, and pursuant to the terms of the Century Agreement, the Plaintiff paid $52,083.12 to Defendants through the EPPS EFT Authorization (the "Transfers") over the period of November 27, 2023, through March 21, 2024.

30.     On or about February 7, 2024, one of the MCAs, Vox Funding LLC, filed a lawsuit (the "Vox Lawsuit") in the Supreme Court of the State of New York, County of Nassau, (the "Nassau County Court") against Plaintiff and Joseph Eshelman.

31.     Upon information and belief, Century Relief retained the services of attorney Micael A. Huerta ("Huerta") to represent Plaintiff and Mr. Eshelman, and Huerta filed with the Nassau County Court on March 8, 2024, the attached, "Defendant's [sic] Verified Answer and Affirmative Defenses," (the "Verified Answer") a copy of which is attached hereto as "Exhibit D" and made a part hereof.

32.     Notwithstanding the filing of a *verified* answer on behalf of both Mr. Eshelman and Plaintiff, neither Mr. Eshelman nor Plaintiff:

    a.  requested the hiring of Huerta;

    b.  were involved or consulted with respect to the hiring of Huerta;

    c.  communicated with Huerta or anyone at his law firm before the Verified Answer was filed;

    d.  asked Huerta to file the Verified Answer; or

    e.  reviewed with Huerta or any member of his firm the Verified Answer for factual accuracy before or after it was filed.

33.     Furthermore, neither Huerta nor anyone from his firm provided information or updates to Plaintiff or Mr. Eshelman regarding the status of the Vox Lawsuit or information and advice about their rights, risks and or responsibilities related to the Vox Lawsuit.

34.     By email dated March 28, 2024, a copy of which is attached hereto as "Exhibit E" and made a part hereof, Plaintiff advised Defendants that it was terminating the EPPS EFT

Authorization and Defendants' services, and Plaintiff requested a refund of the money it had paid

to fund any settlements.

35.     During the term of the Century Agreement, Century Relief reached no proposed

settlements or agreements of any kind with any of the MCAs and conveyed no proposals to

Plaintiff to settle, discharge, or restructure any of the obligations of the MCAs.

36.     Defendants have not issued any refund to Plaintiff of any amount of the

$52,083.12 in Transfers.

### Claims for Relief
### COUNT I:

**Turnover of Property of the Estate Pursuant to
11 U.S.C. §§ 542**

37.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the

preceding paragraphs as if fully set forth herein.

38.     Funds paid to Defendants were held in trust for the Plaintiff and are property of

the estate under section 541(a) of the Bankruptcy Code.

39.     In accordance with section 542(a) of the Bankruptcy Code, the Defendants are in

possession, custody, or control, of property of the estate and must deliver the same to Plaintiff

and account for, such property or the value of such property, unless such property is of

inconsequential value or benefit to the estate.

### COUNT II:

**Avoidance and Recovery of Fraudulent Transfer Pursuant to
11 U.S.C. §§ 548(a)(1)(B) and 551**

40.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the

preceding paragraphs as if fully set forth herein.

41.     Defendants received or benefitted from the Transfers.

42.     The Transfers were transfers of property of the Plaintiff.

43.     In the two years prior to the Petition Date, Defendants received or benefitted from Transfers in the aggregate amount of $52,083.12.

44.     The Plaintiff received less than reasonably equivalent value in exchange for the Transfers; and

> (a) the Plaintiff was insolvent on the date that the Transfers were made, or became insolvent as a result of the Transfers; or
>
> (b) the Plaintiff was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Plaintiff was an unreasonably small capital; or
>
> (c) the Plaintiff intended to incur, or believed that he would incur, debts that would be beyond its ability to pay as such debts matured; or
>
> (d) the Plaintiff made the Transfers to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

45.     For the foregoing reasons, the Transfers should be avoided and set aside as a fraudulent transfer pursuant to section 548 of the Bankruptcy Code.

46.     Pursuant to section 548(a)(1)(B) of the Bankruptcy Code, Plaintiff is entitled to judgment against Defendants avoiding the Transfers.

## COUNT III:

### Avoidance and Recovery of Fraudulent Transfer Pursuant to
### 11 U.S.C. §§ 544(b) and 551, Va. Code §§ 8.01-253 and 55.01-401

47.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

48.     Pursuant to section 544(b) of the Bankruptcy Code, Plaintiff is empowered with the rights and powers of a creditor holding an allowable claim as of the Petition Date and may avoid any transfer of property of Plaintiff that is avoidable by such a creditor under applicable non-bankruptcy law.

49.     In relevant part, Va. Code section 55.01-401 provides that "[e]very gift, conveyance, assignment, transfer, or charge that is not upon consideration deemed valuable in law,…by an insolvent transferor…, shall be void as to creditors whose debts were contracted at the time such gift, conveyance, assignment, transfer, or charge was made . . .."

50.     At all relevant times, there have been one or more creditors who have held and still hold unsecured claims against the Plaintiff that were and are allowable under section 502 of the Bankruptcy Code.

51.     The Transfers constitute transfers or conveyances of the Plaintiff's property.

52.     The Plaintiff was insolvent at the time the Transfers or was rendered insolvent by the Transfers.

53.     The Transfers did not confer any consideration deemed valuable at law to Plaintiff.

54.     Pursuant to Va. Code section 8.01-253, Plaintiff may recover all of the Transfers that occurred within five years prior to the Petition Date.

55.     Plaintiff transferred $52,083.12 of the Transfers within five years prior to the Petition Date.

56.     For the foregoing reasons, the Transfers should be avoided and set aside as fraudulent transfers pursuant to Virginia Code section 55.1-401, as made applicable through section 544(a) of the Bankruptcy Code.

57.     Pursuant to section 544(b) of the Bankruptcy Code, Plaintiff may avoid all of the Transfers that occurred within the five years prior to the Petition Date for the for the benefit of its estate pursuant to Va. Code section 55.01-401.

## COUNT IV:

### Recovery of Property Pursuant to Section 550

58.     The Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

59.     The Plaintiff is entitled to avoid the Transfers pursuant to sections 544 and/or 548 of the Bankruptcy Code.

60.     The Defendants are the initial, immediate, and/or mediate transferees of the Transfers.

61.     The Plaintiff is entitled to recover for the estate the proceeds or value of the Transfers pursuant to section 550 of the Bankruptcy Code.

62.     The Plaintiff is entitled to an order and judgment providing that the proceeds or value of the Transfers are recovered for the benefit of the estate pursuant to section 550 of the Bankruptcy Code.

## COUNT V:

### Preservation of Property Pursuant to Section 551

63.     The Plaintiff repeats and re-alleges each and every allegation contained the preceding paragraphs, as if fully set forth herein.

64.     The Transfers are property of the estate of the Plaintiff.

65.     Each of the Transfers, or the value thereof, should be preserved for the benefit of the Plaintiff's estate pursuant to section 551 of the Bankruptcy Code.

### Prayer for Relief

**WHEREFORE**, the Plaintiff respectfully requests that the Bankruptcy Court enter an Order and Judgment as follows:

(a)     on Count I, ordering the turnover to Plaintiff of the Transfers.

(b)     on Counts II and III, avoiding the Transfers pursuant to section 548 of the Bankruptcy Code and/or sections 55.1-400 and 55.1-401 of the Virginia Code, as made applicable through section 544(b) of the Bankruptcy Code;

(c)     on Count IV, recovering the value of the Transfers pursuant to section 550;

(d)     on Count V, preserving the Transfers, or the value thereof, for the benefit of Plaintiff's estate pursuant to section 551 of the Bankruptcy Code;

(e)     awarding pre-judgment interest at the maximum legal rate running from the date of the Plaintiff's first demand to return the Transfers to the date of judgment with respect to this Complaint herein;

(f)     awarding the Plaintiff its costs and expenses incurred in connection with this Adversary Proceeding, including reasonable attorneys' fees;

(g)     awarding post-judgment interest at the maximum legal rate running from the date

of the judgment until the date the judgment is paid in full, plus costs;

(h)     directing the Defendants to pay forthwith all amounts awarded; and

(i)     granting the Plaintiff such other and further relief as the Court deems just and

proper.

Date:   June 19, 2025                            Respectfully submitted,

                                                VPR, LLC

                                                /s/ David Cox_____
                                                     Counsel

DAVID COX
VSB 38670
COX LAW GROUP, PLLC
900 Lakeside Drive
Lynchburg, VA 24501
434/845-2600
434/845-0727 fax
david@coxlawgroup.com

EXHIBIT A

**Century Relief, LLC**
30 Montgomery Street,
Jersey City, New Jersey 07302

Date:  Nov 20, 2023

Dear:  Joseph Eshelman

Century Relief, LLC ("Firm") would like to congratulate you on your decision in enrolling into our business debt settlement plan. Our goal is to help you and your company with your financial burden in an effort to restructure, discharge, and/or settle the business debt(s) as documented below.

Below is a summary of your plan:

| | |
|---|---|
| Estimated Debt Amount | $264,845.00 |
| Estimated Creditor Repayment Amount | $105,938.00 |
| Total Fee Amount | $79,453.50 |
| Estimated Program Cost | $185,737.75 |
| Estimated Savings | $79,107.25 |
| Number of Installments | 61 |
| Transactional Fees | $14.95 |
| Amount of each Installment: | $3,061.36 |

In order for Firm to begin our services, Company agrees to open a dedicated savings account. Furthermore, Company agrees to make 61 installment payments of $3,061.36 to be disbursed and applied to the Firm fee, to the dedicated savings account for settlement purposes, and to dedicated savings account bank fees as appropriate.

ID: 10805791 Signed: 2023-11-27T09:32:15-06:00

This agreement is made effective as of this day, by and between Century Relief, LLC ("Firm"), a Limited Liability Company operating out of the State of New Jersey, maintaining its principle place of business located at 30 Montgomery Street, Jersey City, New Jersey 07302 and VPR, LLC ("Company"), maintaining its principle place of business located at 2023 Hudson Hollow Road, Stephens City VA 22655.

It is agreed that Company has hired Firm and/or its affiliates and agents to negotiate the restructure, discharge, and settlement the accounts listed in the document Schedule "A" attached herein, and to enter into the Company into affordable payment terms based on the monthly cash flow.

## FEES & INSTALLMENTS

**1. Installments** – Based on the estimated debt amount of $264,845.00 and the Estimated Program Term 61 the payment installments are $3,061.36. The Company authorizes the Firm to automatically debit the bank account designated by Company in the amount of $3,061.36 As per the agreed upon term, either directly or via a third party clearing house.

2. **Fees** – The fee is calculated as a 30% of your total enrolled debt. It is broken up as a 10% Enrollment fee and a 20% Servicing fee.

All installment payments made to the Firm that are applied to the Enrollment Fee are mutually agreed as non-refundable and to be applied in no more that the first six monthly installments. However, if Company terminates this agreement prior to payment in full of the agreed upon fee, remaining portions of the unpaid fee may be debited directly from the clients trust account.

If Firm is able to obtain a reasonable offer to settle, discharge, or restructure any enrolled debt, and the Company choses not to accept the offer, the Servicing fees still apply. Should estimated debts be higher than estimated amount enrolled fees are subject to change to reflect changes in the estimated balance.

3. **Third Party Dedicated Trust Account** – Century shall not and does not hold escrow funds of any kind in a bank account in its own name on behalf of the Company in order to make settlement payments. Company shall authorize a third party dedicated account to debit the Company as per the installment schedule provided in the Century agreement and to accumulate funds in the dedicated account to be used for settlement and/or restructure payments.

4. **Payment Modification** – Company understands that it needs to adhere and follow the payment schedule for all installments and cannot make any payment changes unless they give 2 full business days notice to Firm, prior to the draft date. Furthermore, Company understands that it cannot reduce/modify or skip a payment while Company is in an active settlement/restructure that is dependent on monthly payments; failure to maintain the agreed upon settlement payment schedule may void the settlement agreement.

5. **Termination Policy** - Company may terminate retainer agreement with Firm at any time after the date the agreement was fully executed via written notification via fax to (800) 660-5292 or email to cs@centuryrelief.com.or via first classmail to Century Relief, LLC 30 Montgomery Street, Jersey City, NJ 07302.

6.**Unpaid Fees** If Company owes Century fees and withdraws from the agreement with Century or fails to perform pursuant to said agreement, Century is authorized to demand immediate payment.

### Legal Retainer & Representation

7.  **Engagement Letter** – It is understood and agreed that Company shall sign an engagement letter with a law firm of its own choice. Alternatively, Century will designate a law firm to assist as necessary; Century agrees to pay the invoices for all legal services rendered by the designated law firm pursuant to this agreement. Additionally, Century may retain local counsel in order to represent Company in litigation. It is understood and agreed that all costs related to the retention of local counsel will be paid by Company with funds deposited into the dedicated trust account with Company authorization and by signing this agreement Company specifically authorizes removal of those funds from the dedicated trust account. Company's Legal representation does not include any services rendered in Appellate Courts or any actions or proceedings

other than those related to the debts documented herein.

ID: 10805791 Signed: 2023-11-27T09:32:15-06:00

8. **Authorization to Hire Third Parties** – It is understood and agreed that Century may hire third parties to complete legal work and non-legal work related to this agreement, including but not limited to customer service functions.

## CREDITOR ACKNOWLEDGMENTS

9. **Credit** – Company is advised that enrolling into a business debt settlement plan is an attempt to mitigate the negative impact that debt is having on the successful operation and sustainability of Company's business operations, and not an attempt to restore and/or improve Company's credit score, which may become further impaired as a result of joining the program.

10. **Creditor Contact** – Company agrees not to negotiate directly with any creditor, as it could compromise efforts and representation initiated by Firm. If Company negotiates directly with a creditor and restructures, discharges, or settles a debt as listed in the document entitled Schedule "A" attached herein, firm retains the right to pursue legal action against both parties for any outstanding fee's owed.

11. **Creditor Correspondence** – Company shall refer all calls and correspondence from creditors to Firm. Company agrees to forward to Firm any statement, letter or summons and complaint or any other correspondence that relates to a debt listed in Schedule "A" within twenty-four (24) hours of receipt by Company via facsimile or electronic email with the original forwarded by first class mail.

Furthermore, Company agrees to immediately notify Firm with respect to all changes of Company's contact information, such as change of address, telephone number(s), email address, etc. company will immediately notify firm with respect to changes to Company's bank information related to the scheduled installment payments to Company. If Company fails to meet the obligations and responsibilities defined in this agreement, Firm shall have the right to terminate this agreement without notice to the Company.

12. **Discharged Debts** – Some creditors may write off an entire debt, in which case Company would save the entire amount owed. However, creditors typically do not confirm that a debt has been written off. If the creditor ceases all collection efforts, Firm will consider that debt to be discharged and will collect the settlement success fee for that specific account. Should a Creditor make a claim that the debt was in fact not settled and chose to resume collection efforts, any settlement fee's for that specific account will be refunded to the Company until a resolution is reached again by the Firm.

## ADDITIONAL TERMS & PROVISIONS

13. **Class Action Waiver** – Company hereby agrees to waive any class action proceeding, either as representative of a class or member of a class, against Firm, its affiliates, successors or assigns, whether at law or equity, regardless of which party begins suit. This waiver shall apply to any matter whatsoever between the parties hereto which arises out of or is related in any way to this Agreement, or the performance of either party pursuant to this Agreement.

14. **Limited Liability Provision** – Company understands that Firm, is not liable for any of the Enrolled Debt. Company agrees to limit Firm's, liability in connection with this Agreement for any and all claims, losses, costs and damages of any nature including third party claims and attorney's fees and costs, so that the total aggregate liability of Firm to the Company, if any, shall not exceed the amount of the Fees paid to Firm pursuant to this Agreement

15. **Additional Terms** – Company understands that Firm may assign, delegate or transfer this agreement and any of its rights and/or obligations pursuant to this Agreement at its sole discretion. Company hereby consents to such assignment, delegation, and/or transfer and understands that this consent operates as a novation of Firm's obligations hereunder. Unless terminated earlier pursuant to the terms herein, the term of this Agreement shall commence on the date signed below and shall continue in full force and effect until resolution of all Enrolled Debt.

16. **Terms of Agreement** – Company understands that this agreement, along with any and all addendums, constitutes the final and entire understanding between the parties, it is further understood that there have been no

representation, warranties, or covenants made by Firm or any of its representatives other that those as set forth in this agreement. No modification or waiver of any of the terms of this agreement shall be valid unless done so in writing and executed by both parties.

This agreement shall be construed under the laws of the State of New Jersey without regard to principles of conflicts of laws that would require the application of another law.

Company understands and specifically acknowledges that there is no additional or different term or agreements other than those expressly set forth in this written agreement. Company understands and specifically acknowledges the Firm has made no representations, express or implied, concerning the outcome of the services provided with respect to the debts listed in Schedule; "A" or legal representation provided with respect to litigation related to the debts listed in Schedule "A." Company acknowledges the services offered by Firm may not be in their best interest if they are classified as judgment proof.

I ACKNOWLEDGE AND VERIFY THAT I HAVE READ AND UNDERSTAND THIS AGREEMENT AND AGREE TO ALL TERMS AND CONDITION HEREIN. I ALSO VERIFY THAT I WILL RETAIN A COPY OF THIS AGREEMENT.

**COMPANY**

Owner
**TITLE**                                    & SIGNATURE

VPR, LLC
**COMPANY NAME**

2023 Hudson Hollow Road, Stephens City VA 22655
**COMPANY ADDRESS**

**Schedule A**

| Creditor | Account # | Debt Balance |
|---|---|---|
| Vox Funding LLC | 00000000 | $167,845.00 |
| National Funding | 00000000 | $97,000.00 |
| | | **$264,845.00** |

**Pay Schedule**

| Payment Scheduled Date | EPPS Fee | Payment Amount | Total |
|---|---|---|---|
| Nov 30, 2023 | $14.95 | $3,044.41 | $3061.36 |
| Dec 07, 2023 | $14.95 | $3,044.41 | $3061.36 |
| Dec 14, 2023 | $0.00 | $3,059.36 | $3061.36 |
| Dec 21, 2023 | $0.00 | $3,059.36 | $3061.36 |
| Dec 28, 2023 | $0.00 | $3,059.36 | $3061.36 |
| Jan 04, 2024 | $14.95 | $3,044.41 | $3061.36 |
| Jan 11, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Jan 18, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Jan 25, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Feb 01, 2024 | $14.95 | $3,044.41 | $3061.36 |
| Feb 08, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Feb 15, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Feb 22, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Feb 29, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Mar 07, 2024 | $14.95 | $3,044.41 | $3061.36 |
| Mar 14, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Mar 21, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Mar 28, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Apr 04, 2024 | $14.95 | $3,044.41 | $3061.36 |
| Apr 11, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Apr 18, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Apr 25, 2024 | $0.00 | $3,059.36 | $3061.36 |
| May 02, 2024 | $14.95 | $3,044.41 | $3061.36 |
| May 09, 2024 | $0.00 | $3,059.36 | $3061.36 |
| May 16, 2024 | $0.00 | $3,059.36 | $3061.36 |
| May 23, 2024 | $0.00 | $3,059.36 | $3061.36 |
| May 30, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Jun 06, 2024 | $14.95 | $3,044.41 | $3061.36 |
| Jun 13, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Jun 20, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Jun 27, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Jul 05, 2024 | $14.95 | $3,044.41 | $3061.36 |
| Jul 11, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Jul 18, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Jul 25, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Aug 01, 2024 | $14.95 | $3,044.41 | $3061.36 |
| Aug 08, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Aug 15, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Aug 22, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Aug 29, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Sep 05, 2024 | $14.95 | $3,044.41 | $3061.36 |
| Sep 12, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Sep 19, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Sep 26, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Oct 03, 2024 | $14.95 | $3,044.41 | $3061.36 |
| Oct 10, 2024 | $0.00 | $3,059.36 | $3061.36 |

| Oct 17, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Oct 24, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Oct 31, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Nov 07, 2024 | $14.95 | $3,044.41 | $3061.36 |
| Nov 14, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Nov 21, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Nov 29, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Dec 05, 2024 | $14.95 | $3,044.41 | $3061.36 |
| Dec 12, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Dec 19, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Dec 26, 2024 | $0.00 | $3,059.36 | $3061.36 |
| Jan 02, 2025 | $14.95 | $3,044.41 | $3061.36 |
| Jan 09, 2025 | $0.00 | $3,059.36 | $3061.36 |
| Jan 16, 2025 | $0.00 | $3,059.36 | $3061.36 |
| Jan 23, 2025 | $0.00 | $2,054.15 | $2056.15 |

ID: 10805791 Signed: 2023-11-27T09:32:15-06:00

**Describe the circumstances that caused you to get in this situation and how this situation has impacted your Businesses Financial Situation.**

As part of our approval process, we require potential clients to submit a detailed hardship. Please do not hesitate to tell us everything that has lead to your business current financial situation. This is vital information the law office will use to strategize your account when speaking to your creditors.

Has taken on many projects, waiting on accounts receivable payments has caused issues with the cashflow. Recently missed mortgage payments. Business has been growing financially the past few years but has been placed in a tough spot from the current advances. Using personal finances to help maintain the business.

I/we certify under the penalty of perjury of the law that the above information is true and correct, and that I/we am (are) facing financial hardship. This hardship has made it very difficult to pay the enrolled debts.

Client Name:     Joseph Eshelman

Company:     VPR, LLC

Signature:

**POWER OF ATTORNEY**

I, <u>Joseph Eshelman</u>, authorized person for <u>VPR, LLC</u> ("VPR, LLC")  hereby appoint Century Relief ("Firm") and authorized agents, as my attorney-in-fact, with fullpower to represent Company with respect to the validation, restructure, discharge, settlement and payment as may be required, of my accounts owed to my creditors.

I further authorize Firm to communicate regarding the state of Company's and/or my financial accounts, ability to re-pay debts, specific hardships suffered and/or the possibility of filing for bankruptcy should creditors refuse to negotiate in good faith with Firm, its agents and/or representatives.

I further authorize Firm to discuss, request, release and/or receive confidential credit and account information related to Company's and/or my financial accounts from creditors, credit reporting agencies and other third parties who are involved in these matters.

I further authorize Firm to release a copy of this Power of Attorney to my creditors and their party processing companies.

A photocopy or facsimile shall have the same force and effect as the original document.

Client Name:   <u>Joseph Eshelman</u>

Title:

Company:   <u>VPR, LLC</u>

Address:   <u>2023 Hudson Hollow Road, Stephens City VA 22655</u>

Signature:

Date:   <u>11/27/2023</u>

## Electronic Funds Transfer (EFT) Authorization to Debit Bank Account

Account Owner Name: Joseph Eshelman

Social Security Number: ███-8018        Birth Date: __/__/██/1983

Address: 2023 Hudson Hollow Road   City: Stephens City   State: VA   Zip: 22655

Mobile Phone #: 540-533-8385        Bank Name: WELLS FARGO BANK

Routing Number: 051400549        Account Number: ███████

Total Amount of Debit: 3061.36   Date of First Debit: Nov 30, 2023   Circle One: Checking or Saving

X

### Schedule of Fees and Charges

| | |
|---|---|
| Monthly fee | $14.95 |
| ACH/EFT Fee Per Transaction | $2.00 |
| Chargeback/Late Return Fee | $25.00 NSF |
| Fee | $10.00 |
| Account Closer Fee | $15.00 |

**PREMIUM DISBURSEMENT SERVICES**

| | |
|---|---|
| Wire Transfer | $25.00 |
| FedEx/Overnight Next Day | $50.00 |
| 2nd Day Check With Tracking | $15.00 |
| Settlement payments | $35.00 |

*"EPPS-Ph# 800-215-3484"* will appear on your bank statement in reference to your debit

I hereby apply for and agree to establish a non-interest bearing special purpose account (the "Account") with a bank ("Bank") selected by *EPPS, LLC* and/or its successors for the purpose of accumulating funds to pay for such goods and services as I so direct *EPPS, LLC* to perform. This application is subject to Bank's customer identification program, as required by the USA PATRIOT ACT and other applicable laws, and accordingly, I hereby represent that the above information is true and complete to the best of my knowledge and belief. The bank account information provided above may be subject to account validation processes to include but are not limited to electronic account verification and a $0.01 account validation micro-debit.

I hereby authorize Bank, directly or through *EPPS, LLC*, and/or its service providers, to administer the Account on my behalf by (a) periodically transferring and depositing funds to the Account, via any payment media currently in use, and (b) periodically disbursing funds from the Account pursuant to instructions that I may give from time to time. I hereby authorize payments from the Account for the fees and charges provided for in this application and in the agreement. I hereby grant permission for Bank to share information regarding the Account with *EPPS, LLC* and any other service provider to facilitate the transactions I may initiate that involve the Account, and with any other party that is essential to the administration of the Account on my behalf. My signature below provides permission to be contacted by phone at the number provided with this authorization. *A payment reminder will be sent to your phone number via Text Messaging prior to the payment scheduled above.*

This authorization shall remain in full force and effect until I provide a verbal or written termination notice to *EPPS*. Any such notice, and any other written notice that is provided for in this Application or the Agreement, shall be sent to *EPPS, LLC* at the address set forth in the Agreement.

*"EPPS-Ph# 800-215-3484"* will appear on your bank statement

Account Holder's Signature: _____   Date: 11/27/2023 _____

# Clixsign Completion Certificate

## Signature Package Details

| Final Status | Final Status Date | Package Title | Package ID | # of Signers |
|---|---|---|---|---|
| Completed | 2023-11-27T09:32:15-06:00 | Century Relief Agreement LFS | 10805791 | 1 |

## Sender Information

| Name | Email Address | IP Address | Sending Entity |
|---|---|---|---|
| Adam Giblin | adam@centuryrelief.com | 74.105.148.204 | Century Relief, LLC |

## Signers

Joseph Eshelman     **SIGNER 1**

**Email Address**
Joey@virginiaproroofing.com

**IP Address**
174.196.134.152

**User Agent**
Mozilla/5.0 (iPhone; CPU iPhone OS 16_6_1 like Mac OS X) AppleWebKit/605.1.15 (KHTML, like Gecko) Version/16.6 Mobile/15E148 Safari/604.1

**Package Opened At**
2023-11-20T17:43:06-06:00

**Signature Adopted At**
2023-11-27T09:31:47-06:00

**Package Signed At**
2023-11-27T09:32:15-06:00

EXHIBIT B



# WELCOME ABOARD!

We would like to congratulate you on your decision to join Century Relief ("Century")! Our proven debt relief program which is designed to help you reduce, restructure, or eliminate your business debt our program has helped thousands of people just like yourself take control of your finances.

We understand that your situation can have you feeling overwhelmed at times and our goal is to provide you with the guidance necessary to complete the process. Century Relief will be by your side by keeping you informed on the status of the program every step of the way.

This welcome packet provides useful and insightful information on how the program works and what you will need to begin the process. Please take the time to read through this packet to understand the steps to needed to successfully complete the program.

Whether a creditor is reaching out to you, or the time has come to approve a settlement being in communication with our firm is extremely important. Communication is key to being successful. We are always committed to providing you the highest quality customer service throughout the entire process. Should you have any questions or concerns please feel free to contact us at 800-866-7191.

Settlement offers and creditor correspondence tend to be time sensitive, and we will always require your authorization before proceeding with any settlement. We are here to assist and guide you every step of the way and answer all your questions. Once again thank you for choosing Century Relief. We look forward to helping you reach your financial goals and taking control of your finances to better your business and to better yourself.

Please return filled out welcome packet information as soon as possible to cs@centuryrelief.com

Sincerely,
The Century Relief Team

1



# Table of Contents

Page 3    Program Recap and Additional Steps Needed

Page 4    Power of Attorney

Page 5    ACH Revocation Form

Page 6    Important Contact Information

Page 7    Monthly Expenses

Page 8    Detailed Hardship Form

Page 9    Frequently Asked Questions

Page 10   Frequently Asked Questions Cont'd



# **Program Recap and Additional Steps Needed**

The goal of your plan with Century Relief is to eliminate, settle or restructure your existing debt. The specific result depends on your specific situation. However, one thing is certain: we will provide you with excellent service and the best possible outcome you can hope for to resolve your specific debt. We do not make any payments to your creditors. The plan does require your participation by making sure your scheduled payment is available and by keeping in constant contact with our office.

Scheduled monthly payments will be deposited into a dedicated savings account managed by EPPS. EPPS does charge fees for maintaining the account. These fees are disclosed in the agreement that you signed during your intake process. This EPPS account is the account that your monthly payments will be deposited into and the account that will accumulate savings funds to be used for settlements. All settlement payments will be scheduled through EPPS. **That is why it is so important that you make the regularly scheduled payments. It is also very important to make the regularly scheduled payments to that settlement funds accumulate quickly so that Century Relief can begin to work on your behalf to settle your debts.**

By us using the EPPS account, we will monitor the account and will be able to negotiate with the creditors based on what savings are available for settlement. Once we have a proposed resolution with one of your creditors, we will contact you, to review and discuss the offer with you. If you receive any correspondence from us, please return the call, text or email as soon as possible. **Settlement offers are time sensitive**. We rely on your full cooperation and commitment so that we can provide you with the best possible outcome. Below you will find further steps and that you may want to take.

We will be sending each of your creditors a letter informing them of our involvement and directing them to direct all further communication to our office. If you receive any calls, while we do not prohibit you from speaking to your creditors, we suggest you limit your conversation to informing them that you have enrolled in our program and instruct them to contact us directly.

# Power of Attorney

BE IT KNOWN that I, _____ the authorized person herein has made and appointed Century Relief ("Firm") authorized agents, as my representative – in – fact, with full power to represent Company with respect to the validation, restructure, discharge, settlement and payment as may be required, of my accounts owed to my creditors.

I further authorize firm to communicate regarding the state of Company's and/or my financial accounts, ability to re – pay debts, specific hardships suffered and/ or the possibility of filing bankruptcy should creditors refuse to negotiate in good faith with Firm, its agents and/or representatives.

I further authorize Firm and to discuss, request, release and/or receive confidential credit and account information related to Company's and/or financial accounts from creditors, credit reporting agencies and other third parties who are involved in these matters.

I further authorize Firm to release a copy of this Power of Attorney to my creditors and their party processing companies.

A photocopy or facsimile shall have the same force and effect as the original document.

Company Name: _____

By: Authorized Person's Name: _____

Authorized Person's Signature: _____

Date: _____

STATE OF:
COUNTY OF:

In _____ on the _____ of _____, 20 _____, before me, a Notary Public in and for the same above state and county, personally appeared _____, know to me or proved to be the person named in and who executed the foregoing instrument, and being first duly sworn, such person acknowledged the he or she executed said instrument for the purposes therein contained as his or her free and voluntary act and deed.

(SEAL)                                        _____
                                                                Notary Republic

                                             My Commission Expires: _____

4

# ACH REVOCATION

Date: _____

Re: Business Name: _____

Owner Name: _____

To Whom It May Concern,

I _____ on behalf of _____ hereby revoke any and all authorizations allegedly executed which permit _____ its subsidiaries and/ or its affiliates to initiate ACH debits, Point-of -Sale transactions, electronic checks or any other transaction for any single entry any single entry debit as well as recurring debits defined by the Electronic Funds Transfer Act, 15 U.S.C.1693 et seq. are immediately and unconditionally REVOKED.

Any transactions following this notice will be treated as an unauthorized transaction and may constitute a violation of NACHA rules, Regulation E, and the EFTA.
Sincerely,
_____Personally, and on behalf of _____

5



# Important Contact Information

**Important Emails**

banking@centuryrelief.com (to be used for any banking information changes – please include client id number)

docs@centuryrelief.com (to be used when sending in creditor correspondence – please send in client id number)

cs@centuryrelief.com (to be used for customer service team – please include client id number)

**Contact Information**

Phone: 800-866-7191

Fax: 800-660-5292

(Please include your Client ID and/ or full company name when faxing any documentation)

Web: www.centuryrelief.com

**Hours of Operation**

Monday – Thursday 9AM – 6PM EST

Friday 9AM – 4PM EST

**Mailing Address**

**Century Debt Relief**

30 Montgomery Street, Ste. 1200

Jersey City, New Jersey 07302

www.centuryrelief.com

6



# Monthly Expenses

| | |
|---|---|
| **Current Assets** | |
| Cash | |
| Inventory | |
| | |
| **Fixed Assets** | |
| Leasehold | |
| Property & Land | |
| Renovations/Improvements | |
| Furniture & Fit Out | |
| Vehicles | |
| Equipment/Tools | |
| Computer Equipment | |
| | |
| **Total Assets** | |
| Current/ Short -Term Liabilities | |
| Credit Cards Payable | |
| Accounts Payable | |
| Income Taxes | |
| | |
| **Long Term Liabilities** | |
| Loans | |
| Total Liabilities | |
| | |
| **Net Assets** | |
| **Working Capital** | |

7



# HARDSHIP DISCLOSURE

Describe the circumstances that caused you to get in this situation and how this situation has impacted your Businesses Financial Situation.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**I/we certify under the penalty of perjury of the law that the above information is true and correct, and that I/we am (are) facing financial hardship. This hardship has made it very difficult to pay the enrolled debts.**

_____
Signature

_____
Date

8



# Frequently Asked Questions

How does the program affect my company's credit?

How is your business credit now? Chances are since you are enrolling in a debt restructuring program your businesses credit is already in trouble. At this point, by using our debt restructuring program you are working towards paying off your debt and rebuilding your credit score.

How can I stop the harassing phone calls from creditors?

Upon your first payment clearing we will assign you a negotiator and notify your creditors through a Power of Attorney, that Century Relief will be the new point of contact for them and that they need to work with Century Relief for a resolution of the debt.

When will you settle my first Enrolled Account?

Typically, a settlement takes two to four months from the date of your initial enrollment. However, each program is custom tailored and unique, and a first settlement could happen before or after this typical range.

Does Century Relief make monthly payments to my creditors?

Century Relief does not make monthly payments to your creditors. Our goal is to negotiate with your creditors to reach an optimal resolution for both parties. Once a resolution is achieved payment, money from your dedicated account will be disbursed accordingly.

Can I add additional funds to expedite the process and graduate early?

You can increase your monthly payments at any - time and it is in fact encouraged. Remember there is no penalty for finishing your estimated plan early.

9



Can I add additional creditors to the program?

If you would like to add an account to the program you can speak to your negotiator or customer service representative, they will guide you on the proper steps needed to add the account.

What if a creditor makes a settlement offer?
If you receive an offer from one of your creditors, please reach to your negotiator and notify them of the offer. We will be able to use that information to help with the negotiation process on all accounts.

What do I do if I miss a program payment, or I need to change or modify my payment?
If you miss a payment, it can prolong the program, increase the chances of a creditor sending your debt to a law firm, and if you have a settlement in place with a creditor, that settlement could be deemed null and void. Making your payment is the most critical thing that you can do to help ensure the success of this program. If you ever need to change your payment date, or modify the payment please give us a head up at least 3 business days in advance. This will give us enough time to make the changes and notify the correct parties involved.

EXHIBIT C

**4:45 PM**

**VIRGINIA PRO ROOFING**

**06/17/25**

**Find Report**

**Accrual Basis**

**All Transactions**

| Type | Date | Num | Name | Memo | Account | Class |
|------|------|-----|------|------|---------|-------|
| Check | 03/21/2024 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 03/14/2024 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 03/07/2024 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 02/29/2024 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 02/22/2024 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 02/15/2024 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 02/08/2024 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 02/01/2024 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 01/25/2024 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 01/18/2024 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 01/11/2024 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 01/04/2024 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 12/29/2023 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 12/21/2023 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 12/15/2023 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 12/07/2023 | DEB | EPPS LLC | | VPR LLC-Wells Fargo | |
| Check | 11/28/2023 | WT | EPPS LLC | | VPR LLC-Wells Fargo | |

**Total**

**4:45 PM**

**VIRGINIA PRO ROOFING**

**06/17/25**

**Find Report**

**Accrual Basis**

**All Transactions**

| Clr | Split | Amount | Balance |
|-----|-------|--------|---------|
| X | EPPS Escrow | -3,061.36 | -3,061.36 |
| X | EPPS Escrow | -3,061.36 | -6,122.72 |
| X | EPPS Escrow | -3,061.36 | -9,184.08 |
| X | EPPS Escrow | -3,061.36 | -12,245.44 |
| X | EPPS Escrow | -3,061.36 | -15,306.80 |
| X | EPPS Escrow | -3,061.36 | -18,368.16 |
| X | EPPS Escrow | -3,061.36 | -21,429.52 |
| X | EPPS Escrow | -3,061.36 | -24,490.88 |
| X | EPPS Escrow | -3,061.36 | -27,552.24 |
| X | EPPS Escrow | -3,061.36 | -30,613.60 |
| X | EPPS Escrow | -3,061.36 | -33,674.96 |
| X | EPPS Escrow | -3,061.36 | -36,736.32 |
| X | EPPS Escrow | -3,061.36 | -39,797.68 |
| X | EPPS Escrow | -3,061.36 | -42,859.04 |
| X | EPPS Escrow | -3,061.36 | -45,920.40 |
| X | -SPLIT- | -3,061.36 | -48,981.76 |
| X | -SPLIT- | -3,101.36 | -52,083.12 |
| | | **-52,083.12** | **-52,083.12** |

EXHIBIT D

FILED: NASSAU COUNTY CLERK 03/08/2024 10:51 AM
NYSCEF DOC. NO. 4

INDEX NO. 602247/2024
RECEIVED NYSCEF: 03/08/2024

Case 25-03006   Doc 1   Filed 06/19/25   Entered 06/19/25 21:50:10   Desc Main
Document      Page 42 of 49

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU                                    **Index No. 602247/2024**
-----------------------------------------------------------------------X
VOX FUNDING LLC,

                               Plaintiff,          DEFENDANT'S VERIFIED

v.                                                 ANSWER AND AFFIRMATIVE
                                                   DEFENSES

VPR, LLC d/b/a VPR and JOSEPH ESHELMAN
a/k/a JOSEPH AARON ESHELMAN,

                               Defendants.
-----------------------------------------------------------------------X

## VERIFIED ANSWER

The Defendants, VPR, LLC d/b/a VPR and JOSEPH ESHELMAN a/k/a JOSEPH AARON

ESHELMAN, ("Defendants"), by and through undersigned counsel, answers the complaint filed

by the Plaintiff, VOX FUNDING LLC, ("Plaintiff") as follows:

### THE PARTIES

1.      Defendant is without knowledge as the allegations contained in paragraph 1 and

therefore denies.

2.      The allegations contained in paragraph 2 are admitted for jurisdictional purposes

only and insofar as they seek to impose liability, they are denied.

3.      The allegations contained in paragraph 3 are admitted for jurisdictional purposes

only and insofar as they seek to impose liability, they are denied.

### RELEVANT FACTS

4.      Defendants repeat and reincorporate each and every denial and/or response

contained in paragraphs "1" – "3" and set forth at length herein.

5.      The allegations contained in paragraph 5 are denied.

FILED: NASSAU COUNTY CLERK 03/08/2024 10:51 AM
NYSCEF DOC. NO. 4

INDEX NO. 602247/2024
RECEIVED NYSCEF: 03/08/2024

Case 25-03006   Doc 1   Filed 06/19/25   Entered 06/19/25 21:50:10   Desc Main
Document      Page 43 of 49

6.      The allegations contained in paragraph 6 are denied.

7.      The allegations contained in paragraph 7 are denied.

8.      The allegations contained in paragraph 8 are denied.

9.      The allegations contained in paragraph 9 are denied.

10.     The allegations contained in paragraph 10 are denied.

11.     The allegations contained in paragraph 11 are denied.

12.     The allegations contained in paragraph 12 are denied.

13.     The allegations contained in paragraph 13 are denied.

14.     The allegations contained in paragraph 14 are denied.

15.     The allegations contained in paragraph 15 are denied.

16.     The allegations contained in paragraph 16 are denied.

17.     The allegations contained in paragraph 17 are denied.

18.     The allegations contained in paragraph 18 are denied.

19.     The allegations contained in paragraph 19 are denied.

## AS AND FOR A FIRST CAUSE OF ACTION
## AGAINST MERCHANT
### (Breach of Contract - Agreement)

20.     Defendants repeat and reincorporate each and every denial and/or response

contained in paragraphs "1" – "19" and set forth at length herein.

21.     The allegations contained in paragraph 21 are denied.

22.     The allegations contained in paragraph 22 are denied.

23.     The allegations contained in paragraph 23 are denied.

24.     The allegations contained in paragraph 24 are denied.

## AS AND FOR THE SECOND CAUSE OF ACTION
## AGAINST MERCHANT
### (Unjust Enrichment)

25.     Defendants repeat and reincorporate each and every denial and/or response contained in paragraphs "1" – "24" and set forth at length herein.

26.     The allegations contained in paragraph 26 are denied.

27.     The allegations contained in paragraph 27 are denied.

28.     The allegations contained in paragraph 28 are denied.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST GUARANTOR
### (Breach of Contract - Agreement)

29.     Defendants repeat and reincorporate each and every denial and/or response contained in paragraphs "1" – "28" and set forth at length herein.

30.     The allegations contained in paragraph 30 are denied.

31.     The allegations contained in paragraph 31 are denied.

32.     The allegations contained in paragraph 32 are denied.

## AFFIRMATIVE DEFENSES TO ALL CAUSES OF ACTION

33.     Defendants repeat and reincorporate each and every denial and/or response contained in paragraphs "1" – "32" and set forth at length herein.

34.     Plaintiff lacks personal jurisdiction over defendants.

35.     To the extent that this contract lacks consideration. A transaction that fails to establish consideration is not an enforceable contract.

36.     To the extent that this contract is unconscionable. This contract is so grossly unreasonable that it should be deemed unenforceable

37.     To the extent established in discovery, Plaintiff's Complaint fails to set forth claims upon which relief can be granted.

38.     To the extent established in discovery, each cause of action in the Complaint is barred because the Defendants have not breached any obligation that they may have had with Plaintiffs.

39.     To the extent established by discovery, all or part of Plaintiffs claims are barred in whole or in part by one or more equitable doctrines, including accord and satisfaction unconscionability, waiver, release, estoppel, laches and unclean hands.

40.     To the extent established in discovery, all or part of Plaintiff's claims, are barred in whole or in part by the statute of frauds.

41.     To the extent established in discovery, all or part of Plaintiff's claims are barred in whole or in part and any contract entered into by Defendants with Plaintiff is entitled to a rescission because any such contract was entered into by the Defendants under economic duress and/or through undue influence or fraud on behalf of Plaintiff.

42.     To the extent established in discovery, upon information and belief the Defendants dispute any and all amounts set forth in the documents referenced in the complaint.

43.     To the extent established in discovery, upon information and belief Plaintiff's claims are barred as a result of payment having been made to Plaintiff's by Defendants.

44.     To the extent established in discovery, upon information and belief, the contract is unenforceable due to fraud.

45.     To the extent established in discovery, upon information and belief, the contract is usurious and unenforceable pursuant to General Business Law, sec 5-521, and Penal Law, sec. 190.40.

FILED: NASSAU COUNTY CLERK 03/08/2024 10:51 AM
INDEX NO. 602247/2024
NYSCEF DOC. NO. 4
RECEIVED NYSCEF: 03/08/2024

Case 25-08006   Doc 1   Filed 06/19/25   Entered 06/19/25 21:50:10   Desc Main
Document      Page 46 of 49

46.     Defendants presently have insufficient knowledge or information upon which to form a belief as to whether they may have additional affirmative defenses.  On that basis, the Defendants reserve the right to amend this Answer to asset additional affirmative defenses in the event discovery indicates the additional defenses appropriate.

### DEMAND FOR A JURY TRIAL

The Defendants hereby demand trial by jury in this action of all issue so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, Defendants request that the complaint be dismissed with prejudice and all other relief to which the Defendants are entitled, and requests trial by jury on all issues so triable.

Dated: New York, New York
       March 8, 2024

                         HUERTA PLLC

                         /s Michael A. Huerta
                         *Attorney for Defendants*

                         Michael A. Huerta, Esq.
                         447 Broadway, Ste. 245
                         New York, New York 10013
                         (212) 729-4385

## VERIFICATION

I, **Michael A. Huerta, Esq.,** an attorney duly licensed to practice law in the State of New York, affirm under penalty of perjury:

1. I am an attorney with the firm Huerta PLLC.

2. I have read the foregoing answer and know the contents hereof; and the same is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief.

3. I make this verification as none of the defendants reside in the county where I maintain my offices.

Dated: New York, New York
      March 8, 2024

                          HUERTA PLLC

                          /s Michael A. Huerta
                          *Attorney for Defendants*

                          Michael A. Huerta, Esq.
                          447 Broadway, Ste. 245
                          New York, New York 10013
                          (212) 729-4385

EXHIBIT E

From: Joseph Eshelman <joey@virginiaproroofing.com>
Sent: Thursday, March 28, 2024 9:19 AM
To: Adam@centuryrelief.com
Cc: Aisha Allen <aisha@huertapllc.com>; VPR Office <office@virginiaproroofing.com>; Steve Mayes
<wealthbuilder29@yahoo.com>
Subject: Inadequate services

Adam,

I am writing you this to let you know we no longer wish to use Century Relief to represent us at this
time. Communication has been lackluster to say the very least. The process was explained to us as if
this was fairly fast moving. I have asked for some time now about the allocation of funds without any
answers other than stalling and no answers. Also, many times for updates with issues we were
having.  With that being said, at this time, we no longer authorize payments and no longer wish to
continue to do business. The lawyers have been responsive and helpful this past week and this isn't a
direct reflection of them but more so of the communication or lack of with Century. Please let me
know the steps for refund of the money that you have been collecting to pay Vox.

Joseph Eshelman
VPR, LLC